The next case for argument is 23-1573, In Re, PT Medisafe Technologies. We're ready whenever you are. Good morning. Good morning. May it please the Court? My name is Perry Clark. I represent the appellant, PT Medisafe Technologies, which was the applicant below for the trademark registration at issue in this case. The registration, we sought registration for the mark, which is the color dark green, a specific Pantone 3285C, covering the entire surface of medical examination gloves. The goods at issue were chloroprene medical examination gloves sold to authorized resellers. The trademark office refused registration on two grounds. First, that the mark was generic. Second, that the mark was lacking in acquired distinctiveness. We take issue with both refusals, and I'll address genericness first. Genericness derives from the statute. It derives from 15 U.S.C. 1064, Section 3, which allows for the cancellation of a trademark that becomes the generic name for the goods or services on which it's registered. The phrase generic name is not defined in the statute. It means what it says. It means that the mark has become the name, the identifier of the goods or services. As interpreted by the Supreme Court, generic name is something that refers to the goods at issue in the registration. Our argument here is that the color green 3285C does not name or refer to the category of goods known as chloroprene medical examination gloves. How do you harmonize that argument with the clear law that a trade dress can become generic, but trade dress is also not a name and doesn't, quote, refer to a product or service? Yeah, so I think trade dress can be the name for a product or service. It can refer. In a way that a color cannot? A color could as well. I mean, you can think of examples of where a color could refer to a category of goods or services. So maybe I misunderstood your argument. Are you conceding that a color can be generic? Yes. And therefore not registrable, correct? A color can be generic, yes. I thought you were fighting that premise. So then what's wrong with the Milwaukee test that the board came up with for determining when and whether a color is generic? So the Milwaukee test asks not whether it's a generic name or whether the mark refers to the goods or services. It asks whether the matter sought to be registered is understood by the relevant public primarily as a category or type of trade dress for the genus of goods at issue. And our problem there is that test doesn't capture the notion in the statute of naming. Simply identifying something as a type of trade dress for products doesn't mean that that trade dress names those products. I mean, obviously a box is a type of trade dress that doesn't identify what's in the box. You can think of types of product design trade dress that also don't identify the category of goods. Like white on golf balls. Lots of golf balls are white, but white doesn't identify golf balls. There are other colors of golf balls, and there are other things that aren't white. There are countless examples you can think of where the color of the product doesn't identify the category of the products. And so the problem is when you're talking about just identifying a category or type of trade dress, that isn't the naming function. Now, certainly a type of trade dress, a category of trade dress, can be indistinct. It can fail to serve as a trademark because it's very common. Again, you can think of a box for shoes. Virtually every pair of shoes is sold in a box. But you say a color can be generic, and you don't like the Milwaukee test. So how would you decide if a color is generic? Yeah, that's an excellent question. Take an example of a white golf ball. Tell me how, if we don't use Milwaukee, how do we do it? Right. So I'm not sure that in the case of a white golf ball, it's not generic. Just give me an example of a color that's generic with the test that you're using. Sure. So it's when the public could use that color to refer to the goods. So for example, you're sitting in a restaurant, and the server asks you, what do you want to drink? I'll take the red. I think universally people would say, oh, that's the red wine. I'm old enough to remember in New York when they used to have yellow taxicabs. And if somebody asked you, how do you want to get to the airport? It's like, let's just take yellow or yellow cab. And you would see a sedan drive up. It's colored yellow. You would expect that to be a metered taxicab, unlike itinerant taxicabs. Maybe I'm misunderstanding, but didn't we entertain and reject that argument in Sunrise, or is that something different? No. I don't read Sunrise that way. The issue in Sunrise was whether or not product design trade dress could ever be generic. And in Sunrise, what had happened was that a trademark registrant had obtained incontestable status for its trademark, meaning it could only be challenged on certain grounds, one of which is genericness. And the trademark registrant sought to oppose the registration of its trade dress on the grounds that trade dress could never be generic. And this court rightly rejected that argument to say that trade dress certainly can be generic. Trade dress is not treated for genericness purposes differently than word marks. The statute makes no distinction between word marks and trade dress when analyzing genericness. So the holding in Sunrise was simply that a product design trade dress can be challenged on genericness grounds. But you say in your brief that Sunrise and DICTA actually stated the Milwaukee test. I don't think it did not state the Milwaukee test. I think what Sunrise says in its DICTA. With clubs, right? Well, you could stretch it that far. That's what I thought. I think that would be. And if you go back and look at Judge Rich's opinion in Ginn, the old Ginn case, which is setting the Milwaukee test, if you will, for word marks, right? If the Sunrise case had cited Ginn at the end of that DICTA, you would have had us already having established the test. Yeah, I'm not sure. I think that actually is an issue in this case. And I'm not sure that I would go that far because I think Ginn actually states the test that the Supreme Court tests, the Supreme Court's test, which is, does the word mark name or refer to the category of goods? I think in Sunrise, in particular, the way it's interpreted by the Trademark Office with the Milwaukee test, and in this case, goes too far. It goes so far as to say that if trade dress cannot serve as a source indicator, it is generic. In other words, if any mark that has the potential to but fails to serve as an indicator of source is generic. And that reading goes too far. Your preference would be to eliminate the genus creation step in Milwaukee, right? And simply ask the question, does the public associate this color with this product? Or does the product, does this color identify or refer to the product? Does this color identify, refer to, or name? Well, in the red wine example, no, red doesn't necessarily relate to wine. No, but it's... Red's also the color of the National Baseball Team and lots of other things. Of course, and that is the distinction. Because I think in the case of red wine, the public does associate red. But I thought that was your test. You were asking whether the public associates this particular color with this particular product. Not so much an association as an identification, right? Is this color, does this color identify this product? And here, chloroprene, the product at issue... What do you do with that? Red identifies lots of products? It does, but certainly it can be generic. We are not disputing that... I thought your example of red was meant to indicate, here's an example of a color that is generic. Yes. That's what you're saying. Even as used with wine, it's not a source identifier of any particular manufacturer of wine. Precisely. That's your example. It not only is not a source identifier, it also identifies the product at issue. And that's a stark distinction from this case. Because remember, the product at issue here is chloroprene medical examination gloves. And we all agree, chloroprene is colorless. This product has no inherent color. The color is a result of it being added in the manufacturing process for the purpose of identifying the source. So I see I'm in the yellow. Good morning, and may it please the court. The test that the board applied is the appropriate test here. I hear counsel on the other side saying that it needs to show it identifies the product at issue. As Judge Klebinger, you said, does the public associate the color with the product? That's the test that this court put forward and summarizes the guidance to the board, where it talked about when it was sending the case back to the board for the nautical rope jewelry. It said, in this case, the consumer could associate the registered metallic nautical rope design with the genus of goods, there was clocks, watches, and jewelry, which feature a metallic nautical rope design. We're not dealing with something that you speak or that sounds when you're talking about trade dress or color. It's something that's applied to the product here. So when the board's trying to fit to the gen standard, it doesn't refer to in the sense that consumers are going to speak it, but they understand it as a type of product. So even for counsel's test, the evidence here meets the standard, and what the board said about this dark color green meets the standard. It is so commonly out there from various sources to consumers that it's indicating a category. Green, dark green chloroprene medical examination gloves. It doesn't matter that chloroprene is colorless. Consumers seeking to purchase these goods are exposed to dozens of dark green chloroprene medical examination gloves, many of which include in the description of the glove the word green. So this example of red wine, that's the word red. I don't think anybody disputes that green, based on this record, is generic for chloroprene medical examination gloves. This dark green that they're seeking to register is applied to the surface. It's the pictorial representation of that color. And the record here shows it's not capable of indicating source in one entity because it's used by dozens. And that standard of common use is what's in the case law. It's also in the case law that the court cited too in Sunrise. When we think about terms falling into the public domain, it's because they're commonly used. So the board's focus on common use in the industry and whether it's viewed by consumers as associated with the genus of goods is entirely correct. It's consistent with the case law. It's consistent with the statute. And there was a record here of evidence establishing this. Yes, there's a record of lots of evidence establishing it, including the examples that Medisave says are theirs in the record. When you look at these examples, and they're reproduced in the board's opinion, at A16 to 29 are the 15 that Medisave says are theirs, and at A30 to 38, and in our brief at pages 4 to 5, we list the actual APPX sites for them. Every single one of them, or I should say none of them, indicates a particular manufacturer or source. None of them mention Medisave. Can you give us an example of a color that would indicate source? Yes, pink for insulation. This court's decision in Owens Corning. It wasn't commonly used in the industry. They put it out there as a means for consumers to look for the pink color in the insulation and distinguish it from insulation that's offered by others. That's not this record here. This record here is that dark green is put on these gloves, and there's also evidence in the record that color in the medical glove industry serves versus other. Can you go about proving that in a case with evidence? Is that what you do on pink for insulation? You say to people, oh, did you ever think insulation should be pink? That's one way to do it. This kind of maybe gets to is it distinctive, but we're talking about consumer perception here, and much like the Supreme Court has applied the categories of distinctiveness, the spectrum of distinctiveness, to trade dress. So I don't hear today counsel disputing that trade dress, including color, can be generic. We know that color can never be inherently distinctive, and so sometimes it's capable. It can be. It can be serving these source-indicating functions. We recognize that. The reason I ask my question is whether or not you need the Milwaukee test as a tool for asking whether or not a color is or is not generic, and the notion of creating a genus, because there's an argument here about whether the genus was correctly selected by excluding the distributors. I'm just asking, do you really need that test? Would it suffice with a cleaner test, which would simply ask the question, is it capable of indicating source? That's the fundamental question that this test is designed to ask. The reason I'm asking it is because there's some discussion, apparently, about whether or not since at least our earlier case law on this issue, the Supreme Court has sort of weighed in on genericness of products and whatnot, and whether, as I understood, the background noise, at least in the briefs on the other side, is whether Milwaukee is really nudging up against Supreme Court law or whether it's really consistent with, and that we have potentially an issue first impression here. So if we're fashioning a test, do we need to follow Milwaukee? You don't need to follow it, but I think what the board was doing was following your test from Jen. That says, does it refer to the goods? But because we're not dealing with something that's spoken, and trade dress is the surface of the goods, it's not necessarily the goods themselves, if it's a common trade dress for those goods, that's the right question to ask. Is it perceived as a category of trade dress for those goods, which effectively makes it a type of product, just like a word mark. So you could really kind of view this as, is it so associated with the genus, as opposed to a particular producer, that it's incapable, it's generic. Because genericness is one way that something is incapable and failing to function as a mark, fundamentally. So I think the struggle has been, well, how do you look at it to figure out if something's incapable of designating source? And so the court came up with the gen test for word marks, and the board was simply trying to apply that. But they said what the second factor means, where they articulated the type of trade dress, they're asking whether the color at issue is so common within the genus, the consumers would primarily associate it with the genus. That's at A5. So they say that, and they also started out saying, we consider whether the proposed trade dress mark is so common in the industry that it cannot be said to identify a particular source. That's at A4. That's consistent with all the other cases that have looked at trade dress as whether it's generic. Even McCarthy's notes that in the context of trade dress, the word generic is basically a synonym for common or ordinary. So are you asking us to adopt the Milwaukee test or not? I don't think you have to adopt it because I don't think it's wrong. I think the board did the right thing. But it's getting at the right inquiry, and no matter how it's articulated, what we care about is how's the consumer perceiving this? Is it a type of product? The statute itself uses the term generic name for the goods, emphasis on name. And the argument seems to be from your friend on the other side that the Milwaukee test or even the broader sort of analyses that you're now suggesting today are not sufficiently tied to the statutory text because they don't have anything to do with whether the color is a generic name for the goods. What's your response? The court addressed this in Sunrise. But not in the context of color. Yes, but color is a type of trade dress. So if you look at a metallic rope design, you're not going to say clock, right? The point is, what is this designation? Is it meeting the statutory definition of a trademark? Because a generic misrefusal is under Sections 1, 2, and 45. 45 sets out the definition of a trademark. And the Supreme Court has confirmed for us in Jack Daniels that that's a threshold inquiry. You have to be capable of meeting that definition of distinguishing goods from one another, identifying source, in order to be a trademark, and then in order to be registered. And what we know from this record, and we know from how the board was looking at this, they were trying to figure out, are consumers going to perceive this as indicating source, as a means to distinguish MetaSafe's green gloves from the green gloves of others? Or are they going to view it as a type of glove, the dark green glove I want to buy? And it's the latter here, and that's why it's generic. It's a kind of glove. So I take it, though, you would agree with MetaSafe that the test, what the test should be for whether a color is the generic name for a category of goods or services, that is a question of first impression for our court. I don't believe it is, because the court here has addressed the generic name has to be read broadly to include all the types of marks. In sunrise is what you're saying. Pardon me? Sunrise is what makes it not a question of first impression? I don't think it's a question of first impression. And, again, if you want to look at color, because normally you do have words that go with color, if the consumer would speak the color that's on the goods to refer to them, then the color itself is referring to those goods. That's one way to look at it, that it kind of fits in this refer to and generic name, because you're calling for it by the color. This may not be important, but there's some back and forth about the survey and whether the specimen that triggered the survey, whether there's some factual error about that. Can you help me understand what the alleged error of the board is, if you understand that argument, and does it make a difference? It doesn't make a difference, Your Honor. I think the argument is that the board in this decision reproduced a different stimulus than what they had actually used for the Survey Monkey survey. And given all of the other flaws, that doesn't matter what they saw. There's numerous flaws with the survey evidence. Correct. It was harmless if the board identified the wrong stimulus, because this wasn't conducted according to scientific methods. The attorney was not an expert. It went to six of their own customers. It identified Medisafe in the questions. And if you do want to look at the results, even one of the three that responded said it wasn't distinctive for Medisafe. So the stimulus is not a reason why. It's not going to change the outcome on whether the survey was at all appropriate. Thank you. The court has no further questions. Thank you. Thank you. Thank you, Your Honor. So we hear a lot about consumer perception. And that's the one piece of evidence that's missing from the Trademark Office's conclusions on genericness. There is no testimony from any consumer anywhere that says they regard this color green as the name of, as referring to, or identifying the category of goods known as chloroprene medical examination gloves. There is simply no evidence on that point. And it's the Trademark Office that bears the burden of showing that the consumers think that way. At the heart of this case is an issue that's very important, and that is the difference, the distinction, between concepts of genericness and distinctness. Genericness is a very specific form of descriptiveness that renders a trademark unregisterable. And there's also distinctness. Distinctness basically says this mark is incapable of serving as a trademark. One category of lacking distinctiveness is genericness. So in the vast universe of things that fail to serve as trademarks, be they merely descriptive, be they functional, be they generic, they all fall within this large circle. Within that large circle is genericness. And that's very specific, and it's important to distinguish because genericness has specific statutory aspects. Namely, a trademark that is more than five years old can be canceled on grounds of genericness. It cannot be canceled on any of those other grounds of distinctness. So if we're to say that genericness and distinctness are the same, we're overriding the statutory command that only trademarks that are generic can be canceled after five years. And it's our position that the way that the Trademark Office interpreted genericness basically makes it the same. I mean, if you look at the evidence, the evidence on distinctness is the same as the evidence on genericness. And those two requirements need to be separated. The issue at the end of the day is we are advocating for the standard set forth in GING. We're advocating for a standard that simply asks, does the consuming public regard this color as the name, as referring to, or as identifying the goods at issue? And our position is that the test articulated in Milwaukee Tools, a test invented by the Trademark Office, is not consistent with 15 U.S.C. 1064. It is not consistent with the way the phrase generic name is used in the statute. And it's not consistent with the way that phrase has been consistently interpreted by the Supreme Court, which has expanded generic name and defined it as something that refers to the products at issue. When you're saying Milwaukee test is bad for a name mark? Yes, yes. It's a strong period. Right. Because essentially, if you're applying the Milwaukee test, you're basically asking... Because my understanding was that the Milwaukee test, when it was composed, wasn't a color case. It was a word case, right? For Milwaukee, I actually think that was a color case. I think they were looking at color in that case. GIN is definitely a word case. And let's be honest, that's where the trick is. How do you reconcile a color with tests that were traditionally applied to words? And I think the place to look is just the statute. You don't treat GIN as using a Milwaukee test. I do not, yeah. I think Milwaukee strayed from GIN. It strayed from the statute. And it strayed from the Supreme Court precedent. And it's just time to just go back and just say, look. Statute says what it says. It says generic name. Milwaukee cited GIN as source. I can't recall verbatim the citation. At the end of the statement of their test, they said see GIN. Right. But I don't think GIN says simply identifying something as a category of trade dress is consistent with GIN, which asks, does the mark, be it trade dress or a word, refer to the product at issue? I think that's where it just strayed. And it's just time to just go back to what the statute says and apply the words plainly. Thank you. Thanks so much.